UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

R.M.R.,

*Petitioner,*

– against –

KENNETH GENALO, *in his official capacity as* Field Office Director of New York, Immigration and Customs Enforcement; ANTOINE FRAZIER, *in his official capacity as* Acting Warden of the Metropolitan Detention Center; DAVID J. VENTURELLA, *in his official capacity as* Senior Official Performing the Duties of the Director, U.S. Immigrations and Customs Enforcement; MARKWAYNE MULLIN *in his official capacity as* Secretary of Homeland Security; TODD BLANCHE, *in his official capacity as* Acting Attorney General,

*Respondents.*

**MEMORANDUM & ORDER**
26-cv-04358 (NCM)

**NATASHA C. MERLE**, United States District Judge:

U.S. Immigration and Customs Enforcement ("ICE") arrested and detained petitioner on May 12, 2026. Pet. ¶¶ 26–28, ECF No. 1; Mem. of Law in Resp. to Order to Show Cause ("Resp.") 2, ECF No. 10.[1] Petitioner was subsequently transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he is currently being detained. Pet. ¶ 29. On July 20, 2026, petitioner sought a writ of habeas corpus from this

---

[1]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Court under 28 U.S.C. § 2241. Pet. ¶¶ 6, 74. For the reasons stated below, the petition for a writ of habeas corpus is **GRANTED**.[2]

## BACKGROUND

### I.    Factual Background

Petitioner is a 49-year-old citizen of Colombia. Pet. ¶ 22. He explains that he left his native country fleeing persecution and threats to his life by the Tren de Aragua transnational crime syndicate. Pet. ¶ 22. On September 10, 2022, he arrived in the United States, entering Arizona on foot. Pet. ¶ 23. There, he was encountered by Customs and Border Patrol agents, who arrested and processed him for unlawful entry. Pet. ¶ 23; Decl. of Dmitry Rousseau ("Rousseau Decl.") Ex. A at 2, ECF No. 10-2. He was released on parole, which he was granted through November 15, 2022. Pet. ¶ 23; Rousseau Decl. Ex. B at 2, ECF No. 10-3. His parole was not renewed; however, he was not issued a Notice to Appear ("NTA") or given a hearing date and remained in the country. Pet. ¶ 24; *cf.* Rousseau Decl. ¶ 5 (noting expiration of parole, with no mention of an NTA or hearing at that time).

On September 7, 2023, petitioner applied for asylum, meeting the one-year filing deadline for such applications. Pet. ¶ 24. In connection with that application, he appeared as directed for his biometrics appointment with United States Citizenship and Immigration Services ("USCIS"). Pet. ¶ 24. He also applied for and received work

---

[2]    Although the habeas statute 28 U.S.C § 2243 contemplates a hearing, the Court concludes that the Petition "present[s] only issues of law" and can be appropriately adjudicated without a hearing. *See* 28 U.S.C. § 2243 (requiring the Court to "summarily hear and determine the facts, and dispose of the matter as law and justice require"); *see also O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025) (granting petition prior to hearing); *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025) (same).

authorization. Pet. ¶ 24. At the time of the events relevant to his petition, he was living in New York with his son. Pet. ¶ 25.

On May 12, 2026, petitioner was stopped while driving by officers of the Nassau County Police Department ("NCPD"). Pet. ¶ 26; Rousseau Decl. ¶ 7. After confirming what language petitioner spoke (Spanish) and where he was from (Colombia), the officers reviewed his license, registration, insurance card, and inspection sticker. Pet. ¶ 26; Rousseau Decl. Ex. C at 2. Upon that review, they concluded that the inspection sticker and insurance card were forgeries. Pet. ¶ 27; Rousseau Decl. ¶ 7. Petitioner explained to the officers that he had paid someone for the paperwork, Rousseau Decl. Ex. C at 2, and he continues to maintain that he did not know the documents were forged, Pet. ¶¶ 26–27. Nevertheless, the officers arrested him, charging him with two misdemeanor counts of criminal possession of a forged instrument in the third degree under New York Penal Law § 170.20. Pet. ¶ 27; Rousseau Decl. Ex. C at 2–3. The officers then brought him back to the police station for processing. Pet. ¶ 27; Rousseau Decl. Ex. C at 2–3.

After petitioner had been detained for several hours at the station, NCPD officers eventually escorted him to a parking garage area outside the station. Pet. ¶ 27. There, he was picked up by ICE agents and taken into ICE custody. Pet. ¶ 27. From the parking garage, he was taken to an ICE intake center, where he was processed and detained "pursuant to INA § 235(b)(2)(A) [8 U.S.C. § 1225(b)(2)(A)]." Rousseau Decl. ¶ 11. He was not given a bond hearing or other opportunity to contest the need for his detention. Pet. ¶ 28. Removal proceedings were initiated against him, and he was transferred to a series of immigration detention facilities before ultimately being brought to MDC, where he remains detained today. Pet. ¶¶ 29–30.

## II. Procedural History

On July 20, 2026, petitioner filed a petition in the Eastern District of New York seeking a writ of habeas corpus under 28 U.S.C. § 2241 on the basis, among others, that his detention without a individualized detention assessment was not authorized by the Immigration and Nationality Act ("INA") and violated his due process rights under the Fifth Amendment. *See* Pet. The next day, the case was assigned to the undersigned. *See* Docket Entry dated July 21, 2026. The Court issued an order to preserve its jurisdiction, enjoining respondents from moving petitioner to a location outside the Eastern District of New York, the Southern District of New York, or the District of New Jersey. Scheduling Order 2, ECF No. 5. The Court also directed respondents to show cause as to why the relief sought in the petition should not be granted. Scheduling Order 3.

On July 24, 2026, respondents filed a response arguing, among other things, that petitioner was properly detained under 8 U.S.C. § 1225(b)(2)(A), which is a mandatory detention provision (and, accordingly, under which a individualized detention assessment is not required). *See* Resp. 3–4.

On July 28, 2026, petitioner filed a reply, arguing, among other things, that his detention is governed by 8 U.S.C. § 1226(a), a discretionary detention provision, not 8 U.S.C. § 1225(b)(2)(A). *See* Reply in Opp'n ("Reply") 5–7, ECF No. 11.

## LEGAL STANDARD

Section 2241 authorizes federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28

U.S.C. § 2241(c)(3)).[3] Under Section 2241, "[f]ederal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 290 (E.D.N.Y. 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).

**DISCUSSION**

## I.      Statutory Basis for Petitioner's Detention

The crux of the parties' disagreement in this case is which of two statutes governing immigration detention apply to petitioner: 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(a). The government argues that the former applies, Resp. 3–4, while petitioner argues that his detention is governed by the latter, Pet. ¶¶ 51–68; Reply 5–7 .

Section 1225 states in relevant part that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted[] . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). Meanwhile, Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018); 8 U.S.C. § 1226(a), (c). Detention under Section 1225 is mandatory except that the government may parole the noncitizen into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Ye v. Maldonado*, No. 25-cv-06417, 2025 WL 3521298, at *3 (E.D.N.Y. Dec. 8, 2025). Detention under Section 1226, by contrast, is discretionary, and a noncitizen who is detained may request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and

---

[3]      Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

no danger to the community," *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019); *see also O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 400 (E.D.N.Y. 2025).

In *Barbosa da Cunha v. Freden*, the Second Circuit recently held that Section 1226(a), not Section 1225(b)(2), applied to an asylum seeker who had entered the United States without inspection and had lived in the country for several years. 175 F.4th 61, 69 (2d Cir. 2026). The noncitizen in that case had entered the United States without inspection and admission over 20 years earlier. *Id*. at 70. In the time between his arrival and his detention, he had applied for asylum, received work authorization, and made a home in Massachusetts with his wife and two U.S.-citizen children. *Id*. He was arrested by ICE during a traffic stop, detained, and denied a bond hearing on the grounds that he was subject to mandatory detention under Section 1225(b)(2)(A). *Id*.

The Second Circuit flatly rejected the argument that Section 1225(b)(2)(A) applied. *Id*. at 71–96. It stressed that Section 1225(b)(2)(A) is triggered only when a noncitizen is both an "applicant for admission" and "seeking admission." *Id*. at 73–74. The noncitizen at issue met the statutory definition of an "applicant for admission" because he was "present in the country and has never been admitted." *Id*. at 74. However, he was not "seeking admission," because he was not "requesting lawful entry into the United States"—he was, in fact, already in the country, and had been for two decades. *Id*. To ignore that fact, the Circuit explained, would be to read the "seeking admission" requirement out of Section 1225(b)(2)(A) entirely, rendering it "mere surplus[age]." *Id*.

(quoting *Hechavarria v. Sessions*, 891 F.3d 49, 55 (2d Cir. 2018), *as amended* (May 22, 2018)).[4]

Accordingly, the Circuit held that when Section 1225(b)(2)(A) says "alien seeking admission," it "refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is." *da Cunha*, 175 F.4th at 77; *see also Jennings*, 583 U.S. at 289 (Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings."). And because the noncitizen at issue was no longer seeking entry into the United States, Section 1225(b)(2)(A) could not apply to him. *da Cunha*, 175 F.4th at 74.

Nevertheless, the government in this case argues that *da Cunha* does not apply because here, unlike in *da Cunha*, petitioner was "apprehended shortly after unlawfully crossing the border and released on parole pursuant to 8 U.S.C. § 1182(d)(5)." Resp. 3. In the government's view, *da Cunha* "expressly preserved" Section 1225(b)(2)(A)'s application to noncitizens "apprehended at the threshold of initial entry" and thus to parolees, who are treated "as if stopped at the boundary line," *id.* (quoting *da Cunha*, 175 F.4th at 75 and citing *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958)).

However, that argument, like the one rejected in *da Cunha*, ignores the reality that petitioner here is not "requesting lawful entry into the United States"—he is, in fact, already in the country, and has been for multiple years, including several since his parole lapsed in November 2022. Pet. ¶¶ 23–25. Indeed, like the noncitizen in *da Cunha*, petitioner here has applied for asylum, received work authorization, and made a life with

---

4    That conclusion, the Second Circuit explained, was not only consistent with the plain text and statuory structure but also with the Supreme Court's "established understanding" of the statute and with "Executive Branch practice over thirty years and across five Presidential administrations." *da Cunha*, 175 F.4th at 69.

his child here. Pet. ¶¶ 23–25. In other words, "[h]e is . . . no longer seeking admission; he is here." *Robles Escalona v. Warden, MDC Brooklyn*, No. 26-cv-03920, 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026). Thus, Section 1225(b)(2)(A) cannot not apply to him. *da Cunha*, 175 F.4th at 74.

In fact, multiple courts in this Circuit have reached that same conclusion regarding noncitizens released on parole that later expired. *See Robles Escalona*, 2026 WL 2018505, at *3; *Simms v. Arteta*, No. 26-cv-05712, 2026 WL 2076009, at *3–4 (S.D.N.Y. July 17, 2026); *O.F.B.*, 810 F. Supp. 3d at 401 (predating *da Cunha* but applying virtually identical reasoning regarding the "seeking admission" requirement); *see also Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 188–89 (E.D.N.Y. 2025) (applying same logic, though acknowledging dispute between the parties regarding petitioner's status as a parolee). In doing so, they have rejected virtually identical government arguments regarding parole. *See Robles Escalona*, 2026 WL 2018505, at *3; *Simms*, 2026 WL 2076009, at *3–4; *O.F.B.*, 810 F. Supp. 3d at 401; *Sarmiento Guerrero*, 815 F. Supp. 3d at 189.

Specifically, in each case, the court has rejected the government's argument that its ability to treat parolees "as if stopped at the border" under 8 U.S.C. § 1182(d)(5)[5] means that former parolees like petitioner are still "seeking admission" for purposes of Section 1225(b)(2)(A), despite their presence in the country. *See* Resp. 3; *Robles Escalona*, 2026 WL 2018505, at *3; *Simms*, 2026 WL 2076009, at *3; *O.F.B.*, 810 F. Supp. 3d at 404;

---

[5] Section 1182(d)(5) describes discretionary parole for applicants for admission and explains that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission."

*Sarmiento Guerrero*, 815 F. Supp. 3d at 189. That so-called "entry fiction" arises out of Congress's power to set the terms of a noncitizen's admission into the country. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Because Congress is entitled to set those conditions, the Supreme Court has held that, for constitutional purposes, a noncitizen "at the threshold of initial entry . . . has no entitlement to procedural rights other than those afforded by statute." *Id.*; *see also Sarmiento Guerrero*, 815 F. Supp. 3d at 188 (explaining the same). That limitation contrasts with other noncitizens present in the country, who are generally entitled to more robust due process rights. *Rojas v. Almodovar*, No. 25-cv-07189, 2025 WL 3034183, at *4 (S.D.N.Y. Oct. 30, 2025); *see also Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 109 n.3 (2d Cir. 2010) ("It is well established that aliens detained at the border are not entitled to the same protections as those who have been admitted into the United States."). Accordingly, the entry fiction, were it to apply here, would potentially affect the scope of petitioner's rights under the Due Process Clause.

However, the core issue here is not what due process rights petitioner is entitled to *in the abstract* but what procedural protections Congress has explicitly afforded to him *by statute*: the more limited ones available under 8 U.S.C. § 1225(b)(2)(A) or the more robust ones under 8 U.S.C. § 1226(a). "Even assuming that the entry fiction would apply to [petitioner], it wouldn't affect this statutory analysis." *See Sarmiento Guerrero*, 815 F. Supp. 3d at 188 (quoting *J.G.O. v. Francis*, No. 25-cv-07233, 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025)) (emphasis omitted).[6] Thus, here, the entry fiction at most

---

[6] Accordingly, contrary to the government's argument, this Court's prior contemplation that the entry fiction might apply to parolees does not impact the statutory

stands for the proposition that petitioner has not been admitted yet. *Id.*; *see also O.F.B.*, 810 F. Supp. 3d at 402.[7] And, as the Second Circuit explained in *da Cunha*, that is not enough for 8 U.S.C. § 1225(b)(2)(A) to apply. 175 F.4th at 74.

In short, *da Cunha* directs the conclusion that petitioner's detention is "governed by Section 1226(a), not Section 1225(b)(2)(A)," because he was "already present in the United States." *da Cunha*, 175 F.4th at 70. Thus, this Court joins the growing chorus of courts in this Circuit that have found that noncitizens like petitioner should not be subject to mandatory detention.

## II.     Due Process

"When a petitioner is detained under Section 1226(a), and 'the record demonstrates that the government has made no individualized determination to justify detaining the petitioner,' the detention violates Section 1226(a) and the Due Process Clause of the Fifth Amendment." *Robles Escalona*, 2026 WL 2018505, at *3 (quoting *Ye*, 2025 WL 3521298, at *7–8). Here, the government does not argue that such a determination has been made. *See* Resp. 4 (noting only that "Petitioner's . . . [claim] that his detention violates the due process [clause] under the Fifth Amendment as there was

---

analysis above. *See* Resp. 3 (citing *Y- C- v. Genalo*, No. 25-cv-06558, 2025 WL 3653496, at *6 (E.D.N.Y. Dec. 17, 2025)).

[7]     The government cites Judge Cronan's decision in *Rana v. Genalo* to bolster its position that the entry fiction supports petitioner's detention under Section 1225(b)(2)(A). Resp. 4 (citing *Rana v. Genalo*, No. 26-cv-00849, 2026 WL 1863815, at *5–7 (S.D.N.Y. June 29, 2026)). However, that citation is unavailing. It is true that *Rana* relies on the entry fiction to conclude that a former parolee was subject to mandatory detention. *See* 2026 WL 1863815, at *6. But *Rana* ultimately addressed a different detention provision than *da Cunha*—Section 1225(b)(1), rather than Section 1225(b)(2)(A). The government has not argued that Section 1225(b)(1) applies to petitioner's detention, nor has it explained how an analysis of Section 1225(b)(1) relates to its arguments about Section 1225(b)(2)(A) here. *See* Resp. 3–4. Accordingly, the Court is not moved by the government's reliance on *Rana*.

no individualized assessment for detention [is] premised upon the false assumption that his detention was not lawful and mandatory"). Accordingly, the Court concludes that petitioner is currently being detained in violation of his due process rights.

### III. Appropriate Remedy

To remedy petitioner's deprivation of due process, the Court holds that petitioner is entitled to immediate release from detention. "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Ye*, 2025 WL 3521298, at *9 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody[.] . . . [It] is the most usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it.")); *O.F.B.*, 810 F. Supp. 3d at 405.

Petitioner was summarily detained without "a deliberative process prior to, or contemporaneous with, the initial decision to strip [him] of the freedom that lies at the heart of the Due Process Clause." *Rocano Buestan v. McShane*, No. 25-cv-08544, 2025 WL 3496361, at *6 (S.D.N.Y. Dec. 5, 2025) (ordering petitioner's release because the government's "failure to conduct any kind of individualized assessment *before* detaining him [renders] any post-deprivation review by an immigration judge . . . inadequate"). The Court concludes that no relief short of petitioner's immediate release would be appropriate or sufficient in this case. *See Ye*, 2025 WL 3521298, at *8 ("[T]he government's failure to conduct any kind of individualized assessment before detaining him, failure to make any showing of changed circumstances, and failure to provide him with an opportunity to respond [ ]renders any post-deprivation review by an immigration judge inadequate."); *see also Chipantiza-Sisalema v. Francis*, No. 25-cv-05528, 2025 WL

1927931, at \*3 (S.D.N.Y. July 13, 2025) ("ICE summarily detained [the petitioner] pursuant to an agency policy of arbitrary detention without affording . . . notice or opportunity to be heard."). Accordingly, the Court deems petitioner entitled to immediate release.

## CONCLUSION

For the foregoing reasons, the Court holds that petitioner's detention violates the INA and the Due Process Clause. The petition for a writ of habeas corpus under 28 U.S.C. § 2241 is therefore **GRANTED**.

Respondents are directed to release the petitioner from custody within 24 hours of this Order. Respondents shall file a letter on the docket no later than 12:00 p.m. on August 3, 2026, certifying their compliance.

The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).

For the avoidance of doubt, the Court concludes that petitioner "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of . . . the status quo ante." *Khabazha v. ICE*, No. 25-cv-05279, 2025 WL 3281514, at \*8–9 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"); *see also Ccorihuaman v. Genalo*, No. 26-cv-00554, 2026 WL 328983, at \*2 (E.D.N.Y. Feb. 6, 2026). This Order includes "an injunction barring deprivation of [petitioner's] rights without the requisite

procedural protections." *Khabazha*, 2025 WL 3281514, at \*8; *see also Ccorihuaman*, 2026 WL 328983, at \*2.

Should petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:    July 31, 2026
            Brooklyn, New York